Case 1:04-cv-03961-JFM   Document 14   Filed 10/27/05   Page 1 of 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BALTIMORE CITY BOARD OF | * | |
| SCHOOL COMMISSIONERS, *et al.*, | * | |
| Plaintiffs, | * | Civil No. JFM-04-3961 |
| v. | * | |
| ISOBEL TAYLORCH, *et al.*, | * | |
| Defendants. | * | |

OPINION

This is an appeal from the decision of an Administrative Law Judge ("ALJ") finding that the Baltimore City Public Schools ("BCPS") failed to provide Isobel Taylorch ("Isobel") with a Free Adequate Public Education ("FAPE") and ordering BCPS to reimburse Isobel's parents for private school tuition for the 2003-04 school year. The parties have filed cross-motions for summary judgment.

I.

The facts of this case are generally agreed upon and, unless otherwise noted, have been primarily drawn from the decision of the presiding ALJ.[1] Isobel Taylorch v. Baltimore City Public Sch., OAH No. MSDE-CITY-OT-04-20285 (July 2, 2004).

---

[1] In the Fourth Circuit, "courts are required to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings." *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 103 (4th Cir. 1991). Due weight, for the most part, means that findings of fact are to be considered prima facie correct. *Id.* at 105. Conclusions of law, on the other hand, are reviewed *de novo*. *Weast v. Schaffer*, 240 F. Supp. 2d 396, 407 (D. Md. 2002), *rev'd on other grounds by Weast v. Schaffer*, 377 F.3d 449, 452 (4th Cir. 2004).

Isobel is now 13 years old.  She has been diagnosed with a variety of specific learning disabilities and speech and language impairments including, but not limited to, dysarthia (a speech disorder) and dyslexia.  She also has a variety of neurological problems that have resulted in weaknesses in non-verbal areas of cognitive functioning such as visual-spatial reasoning.  In addition, she suffers from delays in gross and fine motor skills and has been diagnosed with a growth hormone deficiency.  The combination of these difficulties places her at risk for academic, social, and emotional issues.

Up until the 2003-04 school year Isobel attended the Waldorf School, a private institution in Baltimore City.  From the time she was in kindergarten through the 2002-03 school year Isobel received speech and language therapy and occupational therapy paid for by her parents.

In August 2003, Isobel's parents, Susan Taylor and John Lorch ("the Parents"), signed a tuition contract and enrolled her at the Baltimore Lab School ("Lab School") for the 2003-04 school year.  Also in August 2003, Mr. Lorch moved to Baltimore City near Hampden Elementary School.  Ms. Taylor continued to reside in Prince George's County.  Isobel began attending the Lab School in September 2003.

In early October 2003, after Isobel had already begun school at the Lab School, her parents contacted the principal at Hampden Elementary to discuss enrollment procedures for their daughter.  On October 7, 2003, the parents sent a certified letter to Hampden Elementary which included the required information for enrollment as well as three evaluations regarding Isobel's speech and learning disabilities and her need for occupational therapy.  The letter was signed for and received by the school.

After receiving the Parents' letter on October 7, 2003, staff at Hampden Elementary

School apparently misplaced the letter and did not take any further action to develop an Individualized Educational Program ("IEP").  For their part, however, the Parents did not follow up on the letter or contact the school at all, until they filed a request for a due process hearing on March 15, 2004.  The Parents asserted that BCPS's failure to develop an IEP for Isobel constituted a denial of her right to a free appropriate public education ("FAPE") and that as a consequence, they were entitled to reimbursement of the tuition paid to the Lab School for the 2003-04 school year.

In response to the hearing request, BCPS denied receiving the October 2003 letter and provided an affidavit stating that the letter had never been received.  The Parents subsequently withdrew their request for a due process hearing.  However, on the very next day, staff at Hampden Elementary found the letter in the bottom of a filing cabinet and BCPS promptly notified the Parents' counsel that the letter had been found.  BCPS also provided three possible dates to convene an initial IEP meeting.  The Parents then refused to participate in an IEP meeting and refiled their due process hearing request.

In ruling on the due process request, the ALJ granted reimbursement for the period between October 7, 2003 and April 1, 2004, requiring the Plaintiff BCPS to pay for the services provided by the Lab School during that time.  *Taylorch*, OAH No. MSDE-CITY-OT-04-20285.

II.

In her decision, the ALJ proceeded through a four-part analysis determining: (1) whether Isobel was eligible for special education; (2) whether BCPS's failure to develop an IEP resulted in a denial of a FAPE for the 2003-04 school year; (3) if so, whether the Lab School was an appropriate placement for Isobel; and (4) whether the Parents were entitled to reimbursement.

There appears to be no real dispute that Isobel suffers from sufficient disabilities to qualify for special services.  Likewise, BCPS does not contest that the Lab School was an appropriate placement.  Thus, this Court will consider only whether Taylorch was denied a FAPE by the actions of the Plaintiff, and if so, whether the parents are entitled to any reimbursement as a remedy.

A. Denial of a FAPE

The Supreme Court has developed a two-part test to determine whether a student has been denied a FAPE.  *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982).  Applying this test, a court first asks whether the educational authority has "complied with the procedures set forth in the Act," and then inquires whether "the [IEP] developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits". *Id.* at 206-07.  If those requirements were met, then the State has provided the child with a FAPE. *Id.*

As the ALJ noted, the Plaintiff BCPS conceded that its failure to convene to evaluate Isobel's educational needs on receipt of the October 7, 2003 letter constituted a procedural violation of the IDEA.  *Taylorch*, OAH No. MSDE-CITY-OT-04-20285 at 10.  This procedural violation alone can constitute a failure to provide a FAPE.  *See Tice by and through Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200, 1206 (4th Cir. 1990) (quoting *Hall v. Vance County Bd. of Educ.*, 775 F.2d 629, 635 (4th Cir. 1987)) (noting that "failures to meet the Act's procedural requirements are adequate grounds by themselves for holding that a school failed to provide ... a FAPE").  However, BCPS argues that its procedural violation did not constitute denial of FAPE because the Parents did not show that Isobel suffered an educational loss as a

result. This argument fails because the procedural error here precluded the development of an IEP at all.

When defining a test for the denial of a FAPE in *Rowley*, the Supreme Court noted that the first step of the inquiry includes the requirement that the court "determine that the State has created an IEP for the child in question ..." *Rowley*, 458 U.S. at 206 n.27. The Fourth Circuit has agreed, holding that the failure to formulate an IEP, as a result of procedural error or otherwise, constitutes clear denial of a FAPE. *See e.g.*, *Tice*, 908 F.2d at 1207 (stating that failure to implement an IEP left "simply no question" as to a denial of FAPE); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 950 (4th Cir. 1997) (explaining that "[c]entral to the provision of a free appropriate public education is the development of an IEP", and finding a violation of the IDEA because BPCS failed to develop an IEP for the student in question).

In this case, it is clear that BCPS's procedural violation resulted in its failure to develop an IEP. Therefore, the ALJ was correct in finding that "the procedural violation ... clearly resulted in a denial of FAPE." *Taylorch*, OAH No. MSDE-CITY-OT-04-20285 at 12.

B. Reimbursement

Under 20 U.S.C. § 1412(a)(1)(C)(i), reimbursement may be a proper remedy for parents who unilaterally place their child in a private school if the available public school has failed to provide the child with a FAPE. However, the very next provision of the IDEA limits the circumstances in which reimbursement is available to parents. That provision reads: "[i]f the parents of a child with a disability, *who previously received special education and related services under the authority of a public agency*, enroll the child in a private elementary or secondary school …" then those parents may receive reimbursement for the cost of enrollment in

certain situations.  20 U.S.C. § 1412(a)(1)(C)(ii) (emphasis added).

The plain language of section 1412(a)(1)(C)(ii) makes it clear that, as a threshold matter, reimbursement is available only in cases where the disabled student was at one time receiving "special education and related services" from a public agency.  *See e.g., Carmel Central Sch. Dist. v. V.P.*, 373 F.Supp.2d 402, 411 (S.D. N.Y. 2005) (citing the above statutory language and stating that "tuition reimbursement is available only to parents of a child with a disability who enroll their child in private school … after the child previously received special education and related services under the authority of a public agency").  Further, one of the purposes of the 1997 amendment to the IDEA narrowing the circumstances under which reimbursement is available was "to control government expenditures for students voluntarily placed in private schools by their parents."  *Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 152 (1st Cir. 2004); *see also Carmel Central Sch. Dist.*, 373 F.Supp.2d at 413 (noting that the case in question would have been an easy one and reimbursement would have been denied under facts similar to Isobel's if the *Carmel* parents "put their daughter in [a private school] before she received any services" from a public school).

Isobel was, according to the facts found by the ALJ, enrolled in a private school in Baltimore City and then enrolled in the Baltimore Lab School (another private institution) in September before her parents made any request for enrollment at the public school in Hampden. She has never "received special education and related services under the authority of a public agency" as required by the IDEA.  20 U.S.C. § 1412(a)(1)(C)(ii).  As the Supreme Court has dictated, where the language of a statute is unambiguous, "'the sole function of the courts is to enforce it according to its terms.'"  *Gadsby*, 109 F.3d at 953 (quoting *Caminetti v. United States*,

242 U.S. 470, 485 (1917)). Thus, the statutory text commands (and permits) only one result: her parents are not eligible for tuition reimbursement under the IDEA.

To the extent that the decision in *Justin G. v. Bd. of Educ. of Montgomery Co.* is to the contrary, I respectfully disagree with it. In *Justin G.* Judge Williams found that parents of a child with disabilities could obtain reimbursement even though their child had never been enrolled in the public school system. *Justin G.*, 148 F.Supp.2d 576 (D. Md. 2001). Two concerns led Judge Williams to this conclusion: (1) to avoid "the absurd result of barring children from receiving a FAPE because their disabilities were detected before they reached school age," and (2) to extricate parents from "the untenable position of acquiescing to an inappropriate placement in order to preserve their right to reimbursement." *Id.* at 587. The first of these concerns is not present here because Isobel was eleven or twelve years old during the 2003-04 school year.[2] The second concern is understandable and real but is somewhat mitigated by the fact that under the IDEA, parents may place their child in a public school for as short a period as one day, give ten business days' written notice to the school that they are withdrawing the child, and then do so. 20 U.S.C. § 1412(a)(1)(C)(iii)(bb). Thus, the disruption to the child's education can be minimized. In any event, Congress has clearly spoken, and, in order to prevent the FAPE process from being converted to a program for funding private tuition for parents who have demonstrated no commitment to the public school system, it has imposed as a condition for reimbursement the child's initial enrollment in a public school.

For these reasons, I find that Isobel was denied a FAPE by BCPS but that her parents are

---

[2]BCPS also points out that parents may seek "related services" for a child with disabilities before they reach school age and may begin the FAPE process itself during the months before a school year begins.

not entitled to tuition reimbursement for the 2003-04 school year.  Accordingly, a separate order is being entered herewith reversing the ALJ's decision awarding reimbursement.


<u>October 27, 2005</u>                                  /s/_____
Date                                                    J. Frederick Motz
                                                        United States District Judge